UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JASON BOWERS,

               Petitioner,

v.                                      CASE NO. 09-14169
                                      HONORABLE LAWRENCE P. ZATKOFF

NICK LUDWICK,

               Respondent.
_____/

### OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

This matter is pending before the Court on petitioner Jason Bowers' habeas corpus petition under 28 U.S.C. § 2254. Petitioner challenges his plea-based convictions for second-degree murder and other offenses on grounds that the trial court coerced his guilty plea and failed to place him under oath at the plea proceeding. The Court finds no merit in these claims. Consequently, the petition must be denied. The reasons follow.


### I. Background

In 2006, Petitioner was arrested and charged in Wayne County, Michigan with first-degree murder, three counts of assault with intent to commit murder, felon in possession of a firearm, and possession of a firearm during the commission, or attempt to commit, a felony (felony firearm). The charges arose from allegations that Petitioner and his co-defendant fired gunshots at Charles Hunter and three other people who were sitting on the porch of a home at 12142 Pearson Street in Detroit on September 5, 2006. Mr. Hunter died from a single gunshot wound to the head. The other victims

were not injured.

On the day set for trial, Petitioner pleaded guilty in Wayne County Circuit Court to: second-degree murder, Mich. Comp. Laws § 750.317, as a lesser-included offense to first-degree murder; three counts of assault with intent to commit murder as an aider and abettor, Mich. Comp. Laws § 750.83; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and felony firearm, Mich. Comp. Laws § 750.227b. As part of the plea and sentencing agreement, Petitioner also pleaded guilty to violating the conditions of probation in two unrelated cases charging him with obtaining personal information without authorization and receiving and concealing stolen property. The plea agreement called for restitution for the victim's funeral expenses, a term of twenty-eight to fifty years in prison on the murder count and a consecutive term of two years in prison for the felony firearm charge.

At the sentencing on January 4, 2007, Petitioner asked the trial court for permission to withdraw his plea. He stated that he had been under stress and fighting for his life at the time. The trial court denied the motion and then sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms: (1) twenty-eight to fifty years for the murder conviction, (2) ten to twenty-five years for each assault conviction, and (3) one to five years for each of the following charges: being a felon in possession of a firearm, obtaining personal information without authorization in violation of his probation and receiving and concealing stolen property in violation of his probation. Petitioner subsequently filed a motion to withdraw his plea. The trial court heard oral arguments on the motion and denied it.

Petitioner appealed his convictions to the Michigan Court of Appeals on the ground that he should have been allowed to withdraw his plea because he was under extreme stress at the time and

the stress rendered his plea involuntary. He also claimed that he had not wanted to plead guilty and that he would not have pleaded guilty were it not for the Court pressuring him to settle the case. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *See People v. Bowers*, No. 282903 (Mich. Ct. App. Feb. 21, 2007).

Petitioner raised the same issue and some new claims about his attorneys in an application for leave to appeal in the Michigan Supreme Court. On July 29, 2008, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Bowers*, No. 136197 (Mich. Sup. Ct. July 29, 2008).

Petitioner alleges that, in 2009, he filed a motion for relief from judgment in which he claimed to have newly discovered evidence. The trial court denied the motion, and Petitioner did not appeal the trial court's decision. He filed his habeas petition on October 22, 2009. The issues are:

I.    Did the trial judge participate in the plea negotiations which, thus rendered the petitioner's guilty plea involuntary and coerced?

II.    Did plain error occur in the plea proceeding due to the petitioner not being under oath?

Respondent contends in an answer to the habeas petition that Petitioner did not exhaust state remedies for his second claim, but the exhaustion requirement is not a jurisdictional limitation, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010). The Court therefore will proceed to address the substantive merits of Petitioner's claims, using the following standard of review.

## II.  Standard of Review

Habeas petitioners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, __ F.3d __, __, Nos. 06-3571 and 06-3572, 2011 WL 181468, at *5 (6th Cir. Jan. 21, 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible

4

fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 786 (2011).  Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id*.

### III.  Discussion

### A.  The Trial Court's Alleged Participation in the Plea Negotiations

Petitioner alleges that the trial court participated in the plea negotiations.  Petitioner further alleges that the trial court's participation rendered his guilty plea involuntary and coerced because the court abandoned the role of a neutral arbiter.

#### 1.  Supreme Court Precedent

A guilty plea constitutes a waiver of several constitutional rights.  *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  Consequently, the plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).  The defendant "must be apprised of the direct consequences of entering the plea," *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991) (citing *Brady*, 397 U.S. at 755), including "the maximum sentence that could be imposed," *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994) (citing *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991)).

#### 2.  Judicial Participation in Plea Negotiations

The dangers of judicial participation in plea bargaining include its coercive potential and the possibility that a judge's neutrality will be compromised. *United States v. Barrett*, 982 F.2d 193, 195 (6th Cir. 1992). However, participation in plea negotiations does not necessarily amount to a constitutional violation which justifies overturning a guilty plea. *United States v. Harris*, 635 F.2d 526, 528 (6th Cir. 1980); *Desmyther v. Bouchard*, 108 F. App'x 364, 366 (6th Cir. 2004) (quoting *Frank v. Blackburn*, 646 F.2d 873, 880 (5th Cir. 1980)). "'[A] federal court reviewing a state court plea bargain may only set aside a guilty plea or plea agreement which fails to satisfy due process.'" *Desmyther v. Bouchard*, 108 F. App'x at 366 (quoting *Frank v. Blackburn*, 646 F.2d at 882). "'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Id*. at 366-67 (quoting *Frank v. Blackburn*, 646 F.2d at 882).

### 3. Application

Prior to trial in this case, the parties attempted to reach a plea agreement. The plea offer consisted of a sentence of two years in prison for the felony firearm conviction and a consecutive minimum sentence of thirty-eight years for the murder conviction. Negotiations continued on the date set for trial when the murder victim's relatives agreed to a plea offer with a sentence of two years in prison for the felony firearm conviction and a consecutive term of twenty-eight years in prison on the murder count.

During the plea proceeding that followed on the same day, the trial court explained to Petitioner that both of the five-year offenses for violating probation were also part of the plea agreement. Petitioner stated that he understood and that he had discussed the matter with his attorney and with family members. The trial court then asked Petitioner whether he was interested

6

in accepting the plea offer or whether he wanted to proceed to trial.  The court explained that, if Petitioner went to trial and was convicted of first-degree murder, the sentence would be life imprisonment without the possibility of parole and that, if he were convicted of second-degree murder, the sentencing guidelines would be significantly higher than what had been negotiated in his behalf.  The court noted that Petitioner was a habitual offender and that the court would not be able to sentence Petitioner to a sentence lower than what had been offered to him.  The court pointed out that the plea offer was about twelve years below the bottom of the sentencing guidelines and that the top of the guidelines was eighty-seven and a half years.  The court then said,

> So 28, 87, you do the math.  All right.  What are you going to do?  You know what?
> If you don't want to take it, I don't have a problem trying the case.

(Tr. Dec. 11, 2006, at 6.)  Petitioner responded, "I'll take it, man, I'll take it."  (*Id*.)

The trial court then instructed Petitioner to read and sign the settlement form.  The court went on to advise Petitioner of his constitutional rights.  The court also reiterated the terms of the plea and sentencing agreement.  The court pointed out that the jurors and witnesses were present and that the court was ready to proceed to trial, but, by pleading guilty, all three cases would be resolved and Petitioner would not be able to withdraw his plea.  The court also explained that Petitioner was looking at life offenses, but that he had certain trial rights.  Petitioner stated that he understood his rights and the terms of the plea agreement, including the penalties, and that he wanted to plead guilty.  He assured the trial court that no one was forcing him to plead guilty and that he was pleading guilty freely and voluntarily.  He also acknowledged that he could have a trial if he wanted one.  The plea proceeding concluded with Petitioner acknowledging the factual basis for his plea.

There is no indication in the record that the trial court actually participated in plea negotiations.  There also is no indication in the record that the court threatened Petitioner or even

said that the court wanted Petitioner to plead guilty.  Instead, the court provided Petitioner with the information that he needed to make an informed decision, and the court made it clear that Petitioner could commence trial that very day if he so desired.  Petitioner stated that: (1) he understood the plea agreement, (2) the maximum penalties for his convictions, and (3) that he was freely and voluntarily pleading guilty.  He also attested to the fact that no one had promised him anything beyond the terms of the plea agreement, and that no one had threatened him.

Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  This Court concludes from the totality of the circumstances that Petitioner's plea was knowingly, freely, voluntarily and intelligently given  and that his constitutional right to due process was not violated by the trial court's comments during the plea proceeding.

## B. Alleged Error in Plea Proceedings

The second and final habeas claim alleges that plain error occurred in the plea proceeding due to the fact that Petitioner was not placed under oath before pleading guilty.  This claim is based on Michigan Court Rule 6.302(A), which states that, "[b]efore accepting a plea of guilty or nolo contendere, the court must place the defendant . . . under oath . . . ."  Petitioner also relies on Federal Rule of Criminal Procedure 11(b)(1), which has a similar requirement.  Petitioner contends that the failure to place him under oath eliminated the impression that he provided accurate information when he assured the trial court that he was pleading freely and voluntarily.

Although the record does not indicate that Petitioner was placed under oath at his plea, the Federal Rules of Criminal Procedure are not applicable to habeas corpus proceedings under 28 U.S.C. § 2254.  *Horne v. Perlman*, 433 F. Supp. 2d 292, 295 (W.D. N.Y. 2006).  Furthermore, there

8

is no constitutional right to be placed under oath at a plea proceeding, *Phillips v. Murphy*, 796 F.2d 1303, 1307 (10th Cir. 1986), and the alleged violation of Michigan Court Rule 6.302 is not a basis for habeas corpus relief.  "[A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)).  "Issues of state law cannot form the basis for *habeas* relief."  *Landrum v. Mitchell*, 625 F.3d 905, 913 (6th Cir. 2010) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and *Estelle v. McGuire*, 502 U.S. at 67) (emphasis in original); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ( "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law.").  The Court therefore rejects Petitioner's second claim; the claim is not cognizable on habeas corpus review of a state conviction.

## C.    Certificate of Appealability and IFP

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state any claim upon which habeas corpus

9

relief should be granted.  Therefore, the Court will DENY a certificate of appealability.

The standard for issuing a certificate of appealability has a higher threshold than the standard for granting *in forma pauperis* status, which only requires a showing that the appeal is not frivolous. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002).  For the reasons set forth herein, the Court finds that the issues presented by Petitioner's appeal are frivolous. *Hence v. Smith*, 49 F.Supp.2d 547, 549 (E.D. Mich. 1999); Fed. R. App. P. 24(a).  Accordingly, to the extent that Petitioner might file a motion for leave to proceed *in forma pauperis* on appeal, such motion will be DENIED.

### IV.  Conclusion

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED** and that Petitioner shall be **DENIED** leave to proceed *in forma pauperis* on appeal, if such a motion is filed.

IT IS SO ORDERED.


s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 17, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 17, 2011.

s/Marie E. Verlinde
Case Manager
(810) 984-3290